**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ULISES JOSE DE JESUS SOLORIO PATINO,

Petitioner,

v.

TODD M. LYONS, et al.,

Respondents.

No. 1:26-cv-2830-DC-ICD (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner Ulises Jose de Jesus Solorio Patino, an immigration detainee now proceeding with appointed counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement (ICE), together with a request for temporary injunctive relief. ECF Nos. 1, 2. Respondents filed a combined opposition to the request for temporary relief and answer to the petition, in which they waive a hearing and ask the Court to rule on the petition without further briefing. ECF No. 6 at 1. The District Judge denied the request for a temporary restraining order. ECF No. 7. Petitioner, through appointed counsel, filed a reply. ECF No. 15. On September 10, 2026, this case was reassigned to the undersigned for further proceedings. ECF No. 16. For the reasons set forth below, this Court recommends that the petition be granted in part and that Respondents be ordered to provide Petitioner with an individualized bond hearing.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States without inspection as an infant, in or around late 1989 or early 1990, and has lived in this country ever since. ECF No. 1 at 4, 10; ECF No. 6 at 13 (Ex. 1). He is the father of two United States citizen children. ECF No. 1 at 4, 11.

On November 3, 2023, Petitioner was convicted in Riverside County Superior Court of carjacking in violation of California Penal Code § 215(a). ECF No. 6 at 2; id. at 14 (Ex. 1), 30-32 (Ex. 4). Following a probation violation, he was sentenced to three years in state prison. Id. at 27 (Ex. 3), 31-32 (Ex. 4).[1]

On March 5, 2026, upon his release from state custody, ICE arrested Petitioner and served him with a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without having been admitted or paroled. ECF No. 6 at 2; id. at 17-18 (Ex. 2). Petitioner does not have a final order of removal. ECF No. 1 at 4. He has been detained at the California City Detention Center since his arrest and has never received a bond hearing. ECF No. 15 at 3, 6; ECF No. 18 at 1. The record reflects that Petitioner's initial master calendar hearing was set for May 5, 2026, ECF No. 1 at 14; the parties have not advised the Court of the status of the removal proceedings.

In their answer, Respondents contend that Petitioner is subject to mandatory detention under both 8 U.S.C. § 1225(b)(2), as an applicant for admission, and 8 U.S.C. § 1226(c)(1)(A), because his carjacking conviction is a crime involving moral turpitude that renders him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i). ECF No. 6 at 1, 3-8. Respondents further argue that, to the extent Petitioner disputes that he is subject to § 1226(c), he must first raise that argument before an immigration judge at a hearing under Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). ECF No. 6 at 4-5. In the alternative, Respondents ask that any bond hearing place the burden on Petitioner to show that he is not a danger or a flight risk. Id. at 8.

In reply, Petitioner argues that his carjacking conviction does not categorically qualify as a crime involving moral turpitude, that the Notice to Appear charges him only with presence without admission, and that Respondents have not established that he falls within § 1226(c). ECF No. 15 at 4-5. He further argues that his detention without any individualized hearing has become unreasonably prolonged in violation of due process. Id. at 6-7. Petitioner asks the Court to order a

[1] The carjacking conviction is the only conviction on which Respondents rely for mandatory detention. The court acknowledges that Petitioner and Respondents characterize the carjacking conviction differently, but these discrepancies do not affect the recommendation below.

bond hearing within seven days or his immediate release. Id. at 2, 8.

On May 5, 2026, the District Judge denied Petitioner's request for a temporary restraining order. ECF No. 7. The District Judge noted that the Ninth Circuit has held that robbery, an offense substantially similar to carjacking, is a crime involving moral turpitude; that the Supreme Court upheld mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003); and that Petitioner, who had not then responded to Respondents' opposition, had not alleged that he had raised his challenge to mandatory detention before an immigration judge. Id. (citing Mendoza v. Holder, 623 F.3d 1299 (9th Cir. 2010), and 8 C.F.R. § 1003.19(h)(2)(ii)). The District Judge therefore found that Petitioner had not demonstrated a likelihood of success on the merits and referred the matter to the assigned magistrate judge. Id. The Magistrate Judge directed Petitioner to file a reply and ordered that Petitioner not be transferred outside this district pending further order of the Court. ECF No. 8. Petitioner filed a pro se response to Respondents' opposition and, after the Court appointed counsel, a pro se statement in support of the petition and the counseled reply described above. ECF Nos. 9, 11, 12, 14, 15.

On September 17, 2026, the Court took judicial notice that ICE's Online Detainee Locator System indicated that Petitioner was no longer in immigration custody and directed Petitioner to report his custody status and address whether the petition is moot. ECF No. 17. Petitioner's counsel responded with a declaration stating that he spoke with Petitioner by telephone from the California City Detention Center on September 21, 2026; that Petitioner remains in custody there; and that the locator system has also returned no results for other clients whom counsel knows to be in custody. ECF No. 18 at 1-2. Respondents have not filed a response. ECF No. 17 (permitting a reply within five days). Because the record reflects that Petitioner remains in Respondents' custody, the petition is not moot.

## II. LEGAL STANDARD

Federal courts have authority to grant a writ of habeas corpus to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). The Due Process Clause of the Fifth

Amendment protects every "person" within the United States, including noncitizens, from deprivation of liberty without due process of law, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690, 693 (2001); see also Padilla v. ICE, No. 24-2801, 2026 WL 2822044, at *11 (9th Cir. Sep. 21, 2026) ("[t]he application of the Fifth Amendment to noncitizens has been repeatedly and resoundingly reaffirmed over the many years").

## III. DISCUSSION

### A. Detention Authority

#### 1. Section 1225(b)(2)

Respondents acknowledge that courts in this district have rejected their position that noncitizens apprehended in the interior of the United States are subject to mandatory detention under § 1225(b)(2), and they offer no new argument on the point. ECF No. 6 at 7-8. The District Judge has addressed the same issue in prior cases. See ECF No. 5 (citing Alvarez Maciel v. Noem, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948 (E.D. Cal. Feb. 23, 2026), and Barajas Ortiz v. Chestnut, No. 1:26-cv-01167-DC-SCR, 2026 WL 508419 (E.D. Cal. Feb. 24, 2026)). The Ninth Circuit has since resolved the question, holding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). Petitioner, who entered without inspection decades ago and was apprehended in the interior, is therefore not detained under § 1225(b)(2).

#### 2. Section 1226(c)

Respondents' principal argument is that Petitioner is subject to mandatory detention under § 1226(c)(1)(A), which requires the detention of any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2)." 8 U.S.C. § 1226(c)(1)(A). Respondents contend that carjacking under California Penal Code § 215(a) is a crime involving moral turpitude, relying on the Board of Immigration Appeals' decision that robbery is such a crime. ECF No. 6 at 4 (citing Matter of Martin, 18 I. & N. Dec. 226 (BIA 1982)). Petitioner

responds that § 215(a) is not a categorical match, relying on Gutierrez v. Garland, 106 F.4th 866 (9th Cir. 2024). ECF No. 15 at 4.

Gutierrez held that § 215(a) is not categorically a "crime of violence" for purposes of the aggravated felony definition; it did not decide whether the offense is a crime involving moral turpitude and instead remanded that question to the Board. See Gutierrez, 106 F.4th 866. The crime-of-violence and moral-turpitude inquiries are distinct, so Gutierrez does not establish that Petitioner falls outside § 1182(a)(2). On the other hand, as the District Judge observed in denying temporary relief, the Ninth Circuit has held that robbery under California Penal Code § 211, an offense substantially similar to carjacking, is a crime involving moral turpitude. ECF No. 7 (citing Mendoza v. Holder, 623 F.3d 1299 (9th Cir. 2010)). The parties have not identified any decision addressing whether § 215(a), which also reaches takings intended to deprive the owner of the vehicle only temporarily, is categorically a crime involving moral turpitude.

This Court need not resolve these questions, or Respondents' related argument that Petitioner must first seek a Joseph hearing, because Petitioner is entitled to relief even assuming, consistent with the District Judge's preliminary assessment, that he is properly detained under § 1226(c)(1)(A). A Joseph hearing addresses only whether a detainee is "properly included" within a mandatory detention category. See Matter of Joseph, 22 I. & N. Dec. at 805–06; 8 C.F.R. § 1003.19(h)(2)(ii). The immigration courts do not adjudicate constitutional challenges. The exhaustion requirement in this context is prudential, see Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007); Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017), and it may be waived where "administrative remedies are inadequate or not efficacious" or "pursuit of administrative remedies would be a futile gesture." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). Both conditions are met as to Petitioner's due process claim. The undersigned therefore declines to require exhaustion of that claim.

**B. Due Process**

1. Legal Framework

In Demore v. Kim, the Supreme Court rejected a facial challenge to § 1226(c), holding that Congress may require the detention of certain criminal noncitizens "for the brief period

necessary for their removal proceedings." 538 U.S. 510, 513, 531 (2003). The Court's holding rested on its understanding that detention under § 1226(c) lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Justice Kennedy, whose vote was necessary to the majority, explained that a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). In Jennings v. Rodriguez, the Court held that § 1226(c) itself does not impose a time limit on detention or require periodic bond hearings, but it remanded the detainees' constitutional claims without resolving them. 583 U.S. 281, 303-06, 312 (2018). And the Court has since confirmed that its reading of § 1226(c) "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Nielsen v. Preap, 139 S. Ct. 954, 972 (2019).

The Ninth Circuit has not decided what test governs an as-applied challenge to prolonged detention under § 1226(c). In the related context of detention under § 1226(a), the court applied the three-factor balancing test of Mathews v. Eldridge, 424 U.S. 319 (1976), emphasizing that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). Many courts in this district apply Mathews to prolonged detention under § 1226(c), considering, as part of the first factor, the total length of detention to date, the likely duration of future detention, and any delays in the removal proceedings. See, e.g., Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022); Gomes De Souza v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-01479-DJC-SCR (E.D. Cal. Apr. 17, 2026) (findings and recommendations). Respondents cite a decision reaching the contrary conclusion that due process does not require bond hearings for noncitizens detained under § 1226(c), "even for prolonged periods." ECF No. 6 at 6 (quoting Keo v. Warden of the Mesa Verde ICE Processing Ctr., No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025)). The undersigned finds the Mathews approach more consistent with Demore, which upheld mandatory detention on the premise that it would be brief, and with the Supreme Court's express preservation of as-

applied challenges.

The District Judge's order denying temporary relief does not compel a different result. That order concluded, two months into Petitioner's detention and before Petitioner had responded to Respondents' opposition, that Petitioner had not shown a likelihood of success in light of Demore's holding that mandatory detention under § 1226(c) is constitutional. ECF No. 7. The claim now before the Court is different: it is an as-applied challenge that turns on the length of Petitioner's detention, which has more than tripled since that ruling, and which Petitioner has since developed through appointed counsel. See ECF No. 15 at 6-7. Demore itself recognized that such a challenge may lie. See 538 U.S. at 532 (Kennedy, J., concurring). Moreover, rulings on requests for preliminary relief are not binding at the merits stage. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).

2. Application of the *Mathews* Factors

Under Mathews, the Court weighs (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Petitioner's interest in freedom from physical detention is the most elemental of liberty interests. Zadvydas, 533 U.S. at 690. He has been detained since March 5, 2026, without any individualized review, a period that already exceeds the roughly five-month outer range on which Demore relied. See 538 U.S. at 530. His detention is likely to continue for a substantial additional period, as his removal proceedings remain pending without a final order, and any decision by the immigration judge will be subject to appeal and potentially to a petition for review in the Ninth Circuit. Nothing in the record indicates that Petitioner has caused delay in his removal proceedings. Petitioner has also presented evidence that his detention separates him from his two young United States citizen children and that he suffers from medical conditions that have worsened in custody. ECF No. 1 at 5-6, 11-12; ECF No. 15 at 7. This factor weighs heavily in Petitioner's favor.

No hearing has assessed whether Petitioner's continued detention is necessary to prevent flight or protect the community. His detention rests entirely on DHS's categorical determination, and the risk of an erroneous deprivation of liberty in the absence of any hearing is substantial. Petitioner's criminal history, including the carjacking conviction, may well weigh heavily against release at a bond hearing, but this is the kind of fact-specific determination that an immigration judge is eminently equipped to make. The probable value of such a hearing is high. This factor favors Petitioner.

The government has a legitimate and weighty interest in ensuring that noncitizens appear for their removal proceedings and in protecting the public from danger. Demore, 538 U.S. at 515, 528; Rodriguez Diaz, 53 F.4th at 1208. A bond hearing does not undermine those interests. The government's interest is in detaining those noncitizens who pose a danger or a flight risk, and an immigration judge remains free to deny bond if the government makes the required showing. Custody hearings in immigration court are routine, and the administrative burden of providing one is minimal. This factor, while significant, does not outweigh the first two.

On balance, this Court finds that Petitioner's detention since March 2026 without any individualized hearing has become unreasonably prolonged, and that due process requires that he receive a bond hearing before an immigration judge.

**C. Procedures at the Bond Hearing**

Respondents argue that, if the Court orders a bond hearing, Petitioner should bear the burden of showing that he is not a danger or a flight risk, citing Rodriguez Diaz. ECF No. 6 at 8. Rodriguez Diaz, however, addressed a noncitizen detained under § 1226(a), who had already received a bond hearing before an immigration judge and had access to further review; the court held that those existing procedures satisfied due process. 53 F.4th at 1209-13. Petitioner, by contrast, has received no hearing at all. Where a noncitizen has been subjected to prolonged detention without any individualized review, courts in this district continue to require the government to justify continued detention by clear and convincing evidence. See Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (holding that, given the substantial liberty interest at stake, the government must prove by clear and convincing evidence that a noncitizen is a flight

risk or a danger to the community to justify prolonged detention); Gomes De Souza, No. 1:26-cv-01479-DJC-SCR; Valdez Martinez, No. 1:26-cv-01870-KES-EPG-HC. The undersigned agrees that this standard is appropriate. In setting any bond, the immigration judge should also consider Petitioner's financial circumstances and alternative conditions of release. See Hernandez, 872 F.3d at 990–91.

**D. Remaining Claims and Requests**

Considering this recommendation, this court declines to reach Petitioner's statutory claim that his detention is governed by § 1226(a) (ECF No. 1 at 7-8). Petitioner's request for immediate release should be denied; the appropriate remedy for the procedural due process violation identified above is a constitutionally adequate bond hearing.

Petitioner's reply also asserts, for the first time, that his detention violates Zadvydas and the regulations governing detention of noncitizens subject to final removal orders, and that removal to a third country would violate the Fifth, Sixth, and Eighth Amendments, the Convention Against Torture, and the Immigration and Nationality Act. ECF No. 15 at 6–7. A reply "is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Moreover, Zadvydas and the post-order detention regulations concern detention after a final order of removal, and Petitioner does not have one. ECF No. 1 at 4. These claims should be denied without prejudice.

Respondents' request for judicial notice of the exhibits attached to their answer (ECF No. 6 at 2 n.1) should be granted. See Fed. R. Evid. 201(b). Any request for fees and costs under the Equal Access to Justice Act may be raised by timely application following entry of judgment. See 28 U.S.C. § 2412(d)(1)(B).

## IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Respondents' request for judicial notice, ECF No. 6, be GRANTED;

2. The petition for writ of habeas corpus, ECF No. 1, be GRANTED IN PART as to Petitioner's claim that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;

3. Within fourteen **(14) days** of any order adopting these findings and recommendations, Respondents be ORDERED to provide Petitioner with an individualized bond hearing before an immigration judge, at which the government shall bear the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, and at which the immigration judge shall consider Petitioner's ability to pay and alternative conditions of release.

4. Respondents be ORDERED to file a status report within **seven (7) days** after the bond hearing advising the Court of its outcome or, if Petitioner is no longer in Respondents' custody, to file a notice so stating within **seven (7) days** of any order adopting these findings and recommendations;

5. The petition be otherwise DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 2, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE